UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
MENACHEM STEINBERG, an infant under the :
age of eighteen years, by and through his court :
appointed guardian, JOSEPH WOLHENDLER, :
: **MEMORANDUM AND ORDER**
Plaintiff, :
: No. 12 Civ. 51 (SLT) (VMS)
-against- :
:
MOUNT SINAI MEDICAL CENTER, INC., :
HATZOLAH OF WILLIAMSBURG, INC., :
CITY OF NEW YORK, NEW YORK CITY :
ADMINISTRATION FOR CHILDREN'S :
SERVICES, JOHN AND JANE DOES 1-20, :
fictitious names intended to be police officers :
employed by the New York City Police :
Department, and JOHN AND JANE ROES 1-20, :
fictitious names intended to be employees of the :
New York City Administration for Children's :
Services, :
:
Defendants. :
---------------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Joseph Wolhendler ("Mr. Wolhendler" or "Plaintiff") brought this action on behalf of Menachem Steinberg ("Mr. Steinberg"), who was seventeen at the time of the filing of the Complaint, see Compl. ¶ 1,[1] against Defendants Mount Sinai Medical Center, Inc. ("Mount Sinai"); Hatzolah of Williamsburg, Inc. ("Hatzolah"); City of New York (the "City"); New York City Administration for Children's Services ("ACS"); John and Jane Does 1-20 (the "Does"), fictitious names for unknown New York City Police Department ("NYPD") officers; and John

---

[1] Mr. Steinberg has since reached the age of eighteen. On or before April 4, 2014, the Parties shall take all appropriate steps to amend the caption or file a status report letter providing authority for why an amendment is not necessary. In addition, the Parties are to take care to abide by Federal Rule of Civil Procedure ("FRCP") 5.2 in all ECF filings.

1

and Jane Roes 1-20 (the "Roes"), fictitious names for unknown ACS employees (collectively, "Defendants").

During discovery, Defendant Mount Sinai sought the records of the State of New Jersey Department of Children and Families ("DCF") pertaining to Mr. Steinberg. See, e.g., Mot. for Discovery, ECF No. 40. Thereafter, the Office of the Attorney General of the State of New Jersey wrote to the Court concerning state statutes rendering the DCF records confidential and limiting their release. See Letter, ECF No. 49. Pursuant to this Court's Order, the DCF released Mr. Steinberg's records to this Court. See Order, ECF No. 51.

The Court conducted an in camera review of the DCF records. For the reasons stated below, the Court will permit the Parties access to a redacted version of the DCF records, subject to the protective order dated March 31, 2014 and docketed at ECF No. 60 (the "Confidentiality Order"). Following publication of this memorandum and order, and for the reasons stated herein, the Court will make the DCF records available to the Parties on ECF, filed under seal.

I. BACKGROUND

A. Key Events

The following information is drawn from the Complaint and is provided for background purposes only. According to Plaintiff, on September 6, 2010, Mr. Steinberg's mother, Mrs. Faigy Steinberg ("Mrs. Steinberg"), told NYPD officers that her son was dangerous to himself, dangerous to others, and/or suicidal. Compl. ¶ 19, ECF No. 1. Although Mr. Steinberg denied her allegations, the NYPD officers "coerced and forced" Mr. Steinberg to enter an ambulance operated by Hatzolah. Id. ¶ 20. Mr. Steinberg was transported by Hatzolah to Mount Sinai, where he was involuntarily admitted to the psychiatric department. Id. ¶¶ 20-21. Mr. Steinberg remained in the psychiatric department of Mount Sinai through October 4, 2010. Id. ¶ 21.

According to Plaintiff, Mount Sinai determined "at the beginning" of Mr. Steinberg's hospital stay that he did not require involuntary treatment and stated that the hospital could release him into the custody of Mrs. Steinberg. Id. ¶¶ 22-23. Mr. Steinberg allegedly informed Mount Sinai that "his mother had physically and emotionally abused and neglected him, and that he refused to return [to her home]." Id. ¶ 23. Plaintiff alleges that Mount Sinai failed to adequately report this information to ACS. Id. ¶ 24. According to Mr. Wolhendler, he petitioned the New York State Family Court for guardianship of Mr. Steinberg; he was appointed Mr. Steinberg's guardian; and he secured Mr. Steinberg's release from Mount Sinai. Id. ¶ 30.

### B. Procedural Background

No party objected to Mount Sinai's request for discovery of the DCF records. See Mot. for Discovery ("Mt. Sinai Mot."), ECF No. 50.[2] In fact, Plaintiff provided an authorization for Mount Sinai to obtain these records, see Mot. for Discovery, ECF No. 40, although a Court Order was ultimately necessary. According to Mount Sinai, the Parties have already reviewed records related to DCF's actions concerning Mr. Steinberg.[3] Nevertheless, Mount Sinai asserts that the DCF records are relevant to, inter alia, the reasons why Mount Sinai would only release Mr. Steinberg to his mother; attempts made to release Mr. Steinberg to a safe environment; Mr. Steinberg's allegations of abuse by his mother, including DCF's investigation and their purported determination that the allegations were unfounded; Defendants' alleged requests that the State of New Jersey or DCF take custody of Mr. Steinberg; arrangements for Mr. Steinberg

---

[2] To the extent Plaintiff requested to review the DCF records prior to any in camera review by the Court—a request which was relayed by Mount Sinai, but which Plaintiff never made directly to the Court, see id.—the Court denied that request. Order, ECF No. 51. No Party has argued against release of the DCF records to the Parties.

[3] In its motion, Mount Sinai refers to the New Jersey Division of Child Protection and Permanency, which is a division of DCF. See Mt. Sinai Mot. at 2; DCF: About Us, http://www.state.nj.us/dcf/about/ (last visited Mar. 12, 2014).

to be released to a foster family in New Jersey and that family's subsequent refusal to accept responsibility for Mr. Steinberg; and Plaintiff's damages claims. Mt. Sinai Mot. at 2. This Court now determines whether the records should be disclosed, in whole or in part, and what terms should govern the disclosure.

II. ANALYSIS

A. The Legal Standard For Discovery

Pursuant to FRCP 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." Sabharwal v. Mount Sinai Med. Ctr., No. 09 Civ. 1950 (JBW), 2011 WL 477693, at *2 (E.D.N.Y. Feb. 4, 2011) (quoting Burke v. N.Y.C. Police Dep't, 115 F.R.D. 220, 225 (S.D.N.Y. 1987)).

If the information sought is confidential but not privileged, FRCP 26 does not limit disclosure of otherwise discoverable information. See Zaccaro v. 50 E. 196th Assocs., L.P., No. 96 Civ. 5119 (JSR) (HBP), 1997 WL 661905, at *1 (S.D.N.Y. Oct. 23, 1997) (finding that a state confidentiality statute did not raise an issue of privilege under FRCP 26); see also Am. Commerce Ins. Co. v. Harris, No. 07 Civ. 423 (SPS), 2008 WL 3456848, at *1 (E.D. Okla. Aug. 8, 2008) (differentiating "between matters that are both confidential and privileged and those that are merely confidential," and finding that FRCP 26 allows the discovery of non-privileged documents made confidential by state law); Van Emrik v. Chemung Cnty. Dep't of Soc. Servs., 121 F.R.D. 22, 25 (W.D.N.Y. 1988) ("A non-disclosure or 'confidentiality' provision in a statute may not always create an evidentiary privilege, especially if the legislature did not 'explicitly

create an evidentiary privilege.'" (quoting Am. Civil Liberties Union of Mississippi, Inc. v. Finch, 638 F.2d 1336, 1339 (5th Cir. 1981)).

Where, as here, a party seeks discovery relevant to both federal and state civil claims,[4] federal law governs the discovery of information protected by a state confidentiality statute. See Barella v. Vill. of Freeport, 296 F.R.D. 102, 107 (E.D.N.Y. 2013) ("New York State law does not govern discoverability and confidentiality in federal civil rights actions"); Dorsett v. Cnty. of Nassau, 289 F.R.D. 54, 79 (E.D.N.Y. 2012) (same); Ligon v. City of New York, No. 12 Civ. 2274 (SAS), 2012 WL 2125989, at *1 (S.D.N.Y. June 12, 2012) ("[I]n cases presenting federal questions . . . discoverability, privileges, and confidentiality are governed by federal law, not state law.").[5]

Nevertheless, "federal courts must balance the plaintiff[']s interest in disclosure against the state's legitimate concern [for] protecting the confidentiality of the requested information." Bliss v. Putnam Valley Cent. Sch., No. 06 Civ. 15509 (KMK) (GAY), 2008 WL 4355400, at *1 (S.D.N.Y. Sept. 22, 2008). In striking this balance, courts have considered the parties' need for the materials at issue and whether a protective order issued by the court can address the purposes underlying the confidentiality statute. See id.; see also Barella, 296 F.R.D. at 106 (finding that a

---

[4] Although Plaintiff brings only state law claims against Mount Sinai, the party that moved for discovery of the DCF records, these documents are relevant to the federal claims and defenses concerning the same events, and the documents are likely to be used by all Parties. The Court will therefore apply federal law.

[5] Similarly, in cases involving a privilege recognized by state but not federal law, federal law determines whether the state-created privilege applies. Fed. R. Evid. 501 (federal law governs questions of privilege, except that in a civil case "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); see Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (stating that in a case involving a federal RICO claim and pendant state claims, "the federal law of privilege controls the question whether the privileges asserted . . . should be recognized"); see also Fortunatus v. Clinton Cnty., N.Y., No. 12 Civ. 458 (RFT), 2012 WL 4711992, at *6 (N.D.N.Y. Oct. 2, 2012) (same, listing cases); Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011) (same).

protective order would adequately address any privacy concerns related to the personnel files of government employees).[6] Several courts in this Circuit, assessing a variety of New York State confidentiality statutes, have found it possible to balance federal discovery standards and the state's statutory goals by permitting the disclosure subject to confidentiality limitations on the information that state law seeks to protect.[7]

---

[6] When considering state-created privileges, federal courts likewise "accord deference to" state law "as a matter of comity," but state law privileges are nevertheless "construed narrowly, and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." United States v. One Parcel of Prop. Located at 31-33 York St., Hartford, Conn., 930 F.2d 139, 141 (2d Cir. 1991) (internal citations omitted); see Ligon, 2012 WL 2125989, at *1 ("[T]he policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative." (quoting Burka v. N.Y.C. Transit Auth., 110 F.R.D. 660, 664 (S.D.N.Y. 1986))); Sabharwal, 2011 WL 477693, at *2 (federal courts considering a state-created privilege must weigh "1) the need for the information to enforce federal substantive and procedural policies; 2) the importance of the state policy that supports the rule of privilege and the likelihood that recognizing the privilege will advance the state policy; 3) the special need of the litigant who seeks the information; and 4) any adverse impact on local policy if the privilege is not recognized"); Van Emrik, 121 F.R.D. at 25 ("[A] close functional scrutiny of the state interests embodied in [the state's] rule of privilege and any countervailing federal interests implicated in the case should be undertaken to ensure vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with the federal claim.").

[7] See, e.g., Dorsett, 289 F.R.D. at 79 (a state confidentiality statute concerning police officer's personnel files was not a "direct bar" to discovery or public dissemination of otherwise confidential documents, although discovery was subject to a confidentiality order); Oakley v. Fed'n Emp't & Guidance Servs., Inc., No. 10 Civ. 7739 (JSR), 2011 WL 2119741, at *5-6 (S.D.N.Y. May 23, 2011) (finding that the provisions of New York Education Law § 6527 requiring medical and quality assurance records to be kept confidential did not preclude discovery in a case involving federal claims); see Tankleff v. Cnty. of Suffolk, No. Civ. 1207 (JS) (WDW), 2011 WL 1205148, at *6-7 (E.D.N.Y. Mar. 29, 2011) (ordering the production of a sexual offender evaluation report, notwithstanding the confidentiality requirements of New York Mental Hygiene Law § 33.13), order vacated in part on other grounds, No. 09 Civ. 1207 (JS) (WDW), 2011 WL 5884218 (E.D.N.Y. Nov. 22, 2011); Zaccaro, 1997 WL 661905, at *1 (ordering disclosure of public assistance records, notwithstanding the confidentiality requirements of New York Social Services Law § 136, because disclosure was not contrary to the purposes of that statute); Tartaglia v. Paul Revere Life Ins. Co., 948 F. Supp. 325, 330 (S.D.N.Y. 1996) (in a breach of contract action, finding that "the interests of justice significantly outweigh the need for confidentiality of the patient records" and allowing discovery of medical records, "subject to an appropriate confidentiality agreement and redaction," although these records would otherwise be protected from release by New York Mental Hygiene Law § 33.13).

### B. Federal Policy And New Jersey Law Requires That Child Abuse Records Be Kept Confidential

#### 1. Federal Law

The federal Child Abuse Prevention and Treatment Act ("CAPTA") provides federal grants to states for "developing, strengthening, and carrying out child abuse and neglect prevention and treatment programs." 42 U.S.C. § 5106a(a); see 45 C.F.R. 1340.1(a). States wishing to partake of these federal funds must ensure that child abuse records "shall only be made available to," inter alia, "individuals who are the subject of the report" or a "court, upon a finding that information in the records is necessary for the determination of an issue before the court." 42 U.S.C.A. § 5106a(b)(2)(B)(viii); see 45 C.F.R. § 1340.14(i)(1) (to receive federal funds related to CAPTA, states must "provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense"); see also Maiella v. Maiella, No. A-3694-04T3, 2005 WL 3710973, at *5 (N.J. Super. Ct. App. Div. Jan. 30, 2006) (discussing New Jersey's obligations pursuant to 45 C.F.R. § 1340 et seq. and citing to Kaszerman v. Manshel, 176 N.J. Super. 132, 135, 422 A.2d 449, 451 (N.J. Super. Ct. App. Div. 1980), on the same issue). The purpose of this provision is "to protect the rights of the child and of the child's parents or guardians." 42 U.S.C.A. § 5106a(b)(2)(B)(viii).

While "a privilege maybe created by statute," Baldrige v. Shapiro, 455 U.S. 345, 360 (1982) (provisions of the Census Act prohibiting "all disclosure of raw census data reported by or on behalf of individuals" was a "strong policy of nondisclosure" that evidenced Congressional intent to create a privilege), courts considering CAPTA have treated its relevant provisions as a confidentiality requirement, not a federal privilege barring discovery under FRCP 26. See Schwartz v. Jefferson Cnty. Dep't of Human Servs., No. 09 Civ. 915 (WJM) (KMT), 2013 WL

3713640, at *2-3 (D. Colo. July 15, 2013) (finding child abuse records to be relevant, and therefore discoverable, "under the broad definition of Fed. R. Civ. P. 26," notwithstanding CAPTA and state confidentiality statutes that "comply with the federal mandates for funding"); Lewton v. Divingnzzo, No. 09 Civ. 2 (FAG), 2010 WL 4530369, at *2 n.3 (D. Neb. Nov. 2, 2010) (noting that the state's welfare agency "is subject to many confidentiality requirements," and citing to CAPTA, 42 U.S.C. § 5101 et seq.); see also Charlie H. v. Whitman, 213 F.R.D. 240, 249 n.8, 249-52 (D.N.J. 2003) (listing state and federal authority, including federal regulations enacting CAPTA, under which child welfare records were deemed confidential; although the court had originally issued a confidentiality order prohibiting disclosure based on this authority, the court modified its order to permit certain disclosures pursuant to FRCP 26).

### 2. State Law

In this case, the relevant state law is N.J.S.A. 9:6-8:10a, which requires that child abuse records "shall be kept confidential," authorizes their disclosure to courts and specifies the conditions under which a court may disclose the records to others. N.J.S.A. 9:6-8:10a(b)(6), (23). New Jersey law provides that a court "upon its finding that access to such records may be necessary for determination of an issue before it" may disclose child abuse records "in whole or in part to the law guardian, attorney, or other appropriate person upon a finding that such further disclosure is [also] necessary for determination of an issue before the court . . . ." N.J.S.A. 9:6-8:10a(b)(6); see State v. J.L.S., No. A-6220-09T1, 2013 WL 6036726, at *7 (N.J. Super. Ct. App. Div. Nov. 15, 2013) (rather than release child abuse records directly to counsel, New Jersey must "submit the record to the court for an in camera review and a determination that information contained therein is necessary for the determination of an issue before it").

New Jersey state courts will deny access to DCF's records "where 'the information [is] available elsewhere and [ ], regardless of its availability through other sources, the information [is] not determinative of any issues before the court or necessary for the conduct of the proceedings.'" N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 638, 992 A.2d 20, 46 (N.J. Super. Ct. App. Div. 2010) (quoting State v. Cusick, 219 N.J. Super. 452, 463, 530 A.2d 806, 813 (N.J. Super Ct. App. Div. 1987))); see N.E. v. Newark Beth Israel Med. Ctr., No. A-4982-11T3, 2013 WL 709298, at *5-6 (N.J. Super. Ct. App. Div. Feb. 28, 2013) (information in child abuse records relevant to a witness's credibility was "collateral to the material issues before the jury" and did not warrant disclosure). Nevertheless, N.J.S.A. 9:6-8:10a by its terms expressly allows the disclosure of child abuse records in limited circumstances. See N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 26, 59 A.3d 576, 590 (2013) (recognizing that although child abuse records "are kept confidential," N.J.S.A. 9:6-8:10a provides for disclosure to several categories of persons). Furthermore, at least one federal court has allowed broader disclosure than what is specifically permitted by the statute. See Charlie H., 213 F.R.D. at 247-52 (in a case involving federal constitutional claims, allowing the discovery and public disclosure of redacted versions of confidential New Jersey child abuse records, notwithstanding N.J.S.A. 9:6-8:10a).

N.J.S.A. 9:6-8:10a is considered a "strong legislative policy against disclosure of confidential child abuse records." N.E., 2013 WL 709298, at *6. The purposes of the statue are "to preserve the confidentiality of [DCF] records and protect a victim's privacy interests." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 637, 992 A.2d 20, 46 (N.J. Super. Ct. App. Div. 2010). In addition, "[t]his policy exists to encourage the reporting of child abuse and to facilitate the ability of witnesses and case workers to testify." N.J. Div. of Youth &

Family Servs. v. T.H., 386 N.J. Super. 271, 276, 900 A.2d 335, 337 (Ch. Div., Monmouth Cnty. 2006).

Federal and state courts recognize N.J.S.A. 9:6-8:10a to be a confidentiality provision, not a state-created privilege. See, e.g., Charlie H., 213 F.R.D. at 247-52 (permitting discovery of child abuse records in a case involving federal claims, because "Defendants need to do more than assert non-binding state confidentiality statutes to support their contention that release of [child abuse] case records may compromise [] privacy interests"); N.E., 2013 WL 709298, at *5-6 (describing N.J.S.A. 9:6-8:10a as a confidentiality provision, not as a privilege); Maiella, 2005 WL 3710973, at *5 (same); T.H., 386 N.J. Super. at 281, 900 A.2d at 340 (DCF's "records, although ordinarily confidential, were not the subject of any statutory privilege which would protect them from disclosure in judicial proceedings").

    **C.** **Federal Standards For Discovery Warrant Releasing The DCF's Records In A Redacted Form, Subject To A Confidentiality Order**

Although the federal and state confidentiality provisions discussed above do not bar discovery under FRCP 26, see Van Emrik, 121 F.R.D. at 25, the Court must still determine to what extent, if any, they limit discovery in this case. The federal law allows courts to obtain child abuse records, but it does not address disclosure standards explicitly. See 42 U.S.C.A. § 5106a(b)(2)(B)(viii); 45 C.F.R. § 1340.14(i)(2)(ii). Instead, the federal provisions allow states to disclose records to courts "under terms identified in State statute." 45 C.F.R. § 1340.14(i)(2)(ii). Here, New Jersey law allows disclosure by the court when disclosure "is necessary for determination of an issue before the court." N.J.S.A. 9:6-8:10a(b)(6).

As discussed below, the DCF records contain information that the Court finds should be released to counsel because such disclosure is necessary for a determination of the claims and defenses at issue in this action. Additionally, the Court finds disclosure warranted after

balancing Mount Sinai's need for the DCF records against the purposes behind the state confidentiality statute. See Barella, 296 F.R.D. at 106; Bliss, 2008 WL 4355400, at *1. Federal law favoring disclosure and the privacy concerns protected by N.J.S.A. 9:6-8:10a may both be satisfied by release of the DCF records with certain redactions and with the restrictions enumerated in the Confidentiality Order.

The records at issue are not tangential to the litigation; indeed, certain documents directly concern Mr. Steinberg's stay at and discharge from Mount Sinai and have obvious relevance. Therefore, the Court finds that disclosure of these documents to counsel, subject to the Confidentiality Order, is necessary to the determination of the claims and defenses presently before the Court. For example, the records contain information about some of the issues identified by Mount Sinai. Mt. Sinai Mot. 2. Other records report events that are more remote in time, but which nevertheless provide context for the family issues in play, and possibly serve as impeachment materials. Additionally, the documents provide information that would likely relate to Plaintiff's damages claims and Defendants' defenses, such as information about other relevant investigations.

In this case, Mount Sinai, as well as the other Parties, would be prejudiced were discovery of the DCF records foreclosed. It is well-established that federal law favors broad discovery, particularly in civil rights cases. See, e.g., Snoussi v. Bivona, No. 05 Civ. 3133 (RJD) (LB), 2009 WL 701007, at *2 (E.D.N.Y. Mar. 10, 2009). The DCF records are a uniquely valuable source because they offer a contemporaneous account of relevant events, including statements from witnesses who may not otherwise recall events that occurred three-and-a-half years ago. They are also contemporaneous business records that can help confirm or refute whether claimed communications among Parties and other entities occurred, evidence which

directly relates to certain claims and defenses.  Mount Sinai therefore has a special need for these records.

Generally speaking, the privacy and other policy concerns underlying N.J.S.A. 9:6-8:10a offer compelling reasons to limit discovery of child abuse records.  Here, the privacy concerns are greatly mitigated by Plaintiff's providing Mount Sinai an authorization for release of the DCF records, see Mot. for Discovery, ECF No. 40, thus implicitly recognizing the relevance of these records to the claims and defenses at issue in Plaintiff's lawsuit, and suggesting that the often-present concern that a record release may further harm a victim is not present in this case. Cf. Michelman v. Ricoh Ams. Corp., No. 11 Civ. 3633 (MKB), 2013 WL 664893, at *3 (E.D.N.Y. Feb. 22, 2013) (stating that although "a plaintiff has a privacy interest in his or her medical records," the plaintiff opened the door to the discovery of her medical records). Moreover, the release of the records is unlikely to adversely affect future reports of abuse or case workers' handling of cases because the subject of the records is already known to the Parties in this litigation, so there is no deterrent effect.

On the other hand, the release of DCF records has the potential to implicate the privacy interests of a wide range of individuals besides the former minor whose welfare DCF investigated, such as that child's family members, the person(s) who reported the alleged abuse and other children.  In light of these privacy concerns—especially the privacy of nonparty family members named in the records—the Court in its discretion has redacted personal addresses and telephone numbers; birthdates; the names of minors other than Mr. Steinberg;[8] and information by and about other minors that did not directly relate to Mr. Steinberg.

---

[8] Concerning birthdates and children's names, the Court applied the redactions mandated by FRCP 5.2 for public filing on ECF, notwithstanding that the documents will be filed under seal. In addition, the Court has redacted all original signatures and replaced them with a typed name.

In addition, the Parties will be bound by the Confidentiality Order, which requires that the counsel for each Party maintain only one paper copy of the DCF records; that the paper copy be maintained in a locked file in the office of counsel of record; that only certain individuals may view the records, in the presence of counsel and after having agreed to the terms of the Confidentiality Order (except as to experts, about whom there are particular provisions); and that no electronic copy of the records be maintained other than that available on ECF.

In summary, the Court finds that release of the non-redacted portions of the DCF records is necessary to a determination of the issues before the Court, and that the above-described redactions and Confidentiality Order adequately address confidentiality concerns, while providing Mount Sinai and other Parties with the broad discovery mandated by federal law.

### III. CONCLUSION

For the reasons stated above, the Court will release a redacted version of the DCF records to the Parties via ECF. The documents will be filed under seal so that they are accessible only to the Parties via counsel and the Court. The Parties' use of these documents is subject to the terms of the Confidentiality Order dated March 31, 2014.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 31, 2014

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge