UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
M.S., an infant under the age of 18 years, by
and through his court appointed guardian,
JOSEPH WOLHENDLER,[1]

                        Plaintiff,

                                  **MEMORANDUM & ORDER**

          - against -                          12-cv-00051 (SLT) (VMS)


THE MOUNT SINAI MEDICAL CENTER, INC.,
HATZOLAH OF WILLIAMSBURG, INC.,
CITY OF NEW YORK, NEW YORK CITY
ADMINISTRATION FOR CHILDREN'S SERVICES,
JOHN AND JANE DOES 1-20, fictitious names intended
to be police officers employed by the New York City
Police Department, and JOHN AND JANE ROES 1-20,
fictitious names intended to be employees of the
New York City Administration for Children's Services,

                        Defendants.
-----------------------------------------------------------X

**TOWNES, United States District Judge,**

      Joseph Wolhendler brings this case on behalf of M.S., a minor for whom he is a court-appointed guardian, against the City of New York ("NYC"), the Mount Sinai Medical Center, Inc. ("Mt. Sinai"), Hatzolah of Williamsburg, Inc., the New York City Administration for Children's Services ("ACS"), and numerous "Doe" defendants, alleging claims under 42 U.S.C. § 1983 and state law arising out of his involuntary commitment at Mt. Sinai. Currently before the court is NYC's motion for summary judgment on M.S.'s § 1983 claim. Also before the court is Wolhendler's motion to amend the complaint to name as defendants the two police officers and ACS caseworker who were involved in M.S.'s commitment. For the following reasons,

---

[1] The Court hereby amends the caption to refer to the minor Plaintiff by his initials, M.S., in accordance with Federal Rule of Procedure 5.2 and Eastern District practice.

NYC's motion for summary judgment is granted and Wolhendler's motion to amend the complaint is denied.

## LEGAL STANDARD

Summary judgment is appropriate only where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With this standard in mind, the pertinent facts, undisputed, or where disputed considered in M.S.'s favor, are as follows:

## BACKGROUND

On September 6, 2010, M.S., a member of the Jewish Satmar community, was committed to Mt. Sinai by his mother, F.S., who was his legal guardian at the time. On the hospital admission forms F.S. reported that her son expressed suicidal tendencies. (Pl.'s 56.1 Stmt. ¶ 18.)

Realizing that he was about to be committed against his will and without his prior knowledge, M.S. fled from the ambulance, operated by defendant Hatzolah, which his mother had privately contracted to take him to Mt. Sinai (Pasik Decl. ¶4). He borrowed a cellphone and called the police. (Pl.'s 56.1 Stmt. ¶ 12.) Two police officers, Officers Morel and Chang, responded to the call. (Chang Dep. 10:16-19.) After arriving on the scene the officers asked M.S. to re-enter the ambulance, which he willingly did, and then escorted the ambulance to the Mt. Sinai emergency room. (Id. 23:3-5.)

2

Upon arrival at Mt. Sinai on September 6, 2010, M.S. was committed. Two days later, he was evaluated by medical professionals who determined that he was not suicidal. (Pasik Decl. Ex. C). Based on this evaluation, the hospital was willing to release him into the custody of his mother. (Pasik Decl. Ex. C). However, M.S. refused to be released into his mother's custody, citing a long history of neglect and abuse. (Pl.'s 56.1 Stmt. ¶ 34.) He stayed in the hospital until legal guardianship could be transferred to another party. (Pl.'s 56.1 Stmt. ¶ 49.) Mt. Sinai, working with Feola Murray, a caseworker from ACS, made two attempts to find a suitable foster placement, however neither was successful. (Pl.'s 56.1 Stmt. ¶¶ 35-37.) Finally, on Oct. 4, 2010, suitable placement was identified and legal guardianship was transferred from F.S. to Joseph Wolhandler. (Pl.'s 56.1 Stmt. ¶ 58.) M.S. was discharged into Wolhandler's custody that same day.

On May 1, 2012, Wolhandler commenced the instant action on behalf of M.S. against: Mt. Sinai, Hatzolah, NYC, ACS, John and Jane Does 1-20, and John and Jane Roes 1-20. Claims for relief are brought under 42 U.S.C. § 1983 against the City of New York, ACS, John Does 1-20, and John Roes 1-20 along with additional state law claims against all defendants. Currently before the Court are NYC's motion for summary judgment and Plaintiff's motion to amend the complaint to change "John and Jane Doe 1-20 and John and Jane Roe 1-20" to include the Police Officers, Chang and Morel, who responded to the scene, and the ACS caseworker, Feola Murray, who assisted in identifying foster placement.

## DISCUSSION

*Claim under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities and other local government bodies, such as NYC, can be sued as persons under § 1983. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978). Therefore, NYC may be held liable under § 1983. *Graham v. City of New York*, 869 F.Supp.2d 337, 348 (E.D.N.Y. June 14, 2012). However, ACS is an agency of the state of New York and, as such, cannot be sued independently. N.Y.C. Charter ch. 17 §396. Accordingly § 1983 claims against ACS are construed as claims against of the City of New York. *See id.*

In order to establish that a municipality or other local government body has violated § 1983, a plaintiff must point to a municipal "policy" or "custom" that has caused his injury. *Monell*, 436 U.S. at 694. Here, it is unclear what policy or custom Plaintiff claims led to the alleged injuries. Nowhere in the complaint does Plaintiff explicitly or implicitly allude to any type of policy or custom that might have led to a violation of M.S.'s rights.[2] The complaint focuses on one incident, however, generally, a single incident involving an individual who is not a policymaker is not sufficient evidence of the existence of a policy or custom and does not alone suffice to state a § 1983 claim. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it ... can be attributed to a

---

[2] The complaint briefly mentions the idea that the lack of an explicit policy could potentially be considered a policy itself. (M.S. Declaration p8, ¶19-20) This claim seems tenuous at best under these facts. M.S. cites no pertinent case law, nor does he explain how a 'lack of policy' has anything to do with the single incident alleged in his complaint. *See Feldman v. City of New York*, 493 F.Supp.537 (S.D.N.Y. 1980) (noting that NYC's failure to adequately train police officers fails to meet the threshold required for a § 1983 claim when no facts were shown to support such assertions.)

municipal policymaker."). For a single incident to support an inference of a policy or practice for a § 1983 claim, the incident must involve a clear and egregious violation of civil rights, such as the physical abuse by state correction officers of inmates under their care. *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979). That is not the case here.

Officers Morel and Chang escorted M.S. back into the custody of his legal guardian and, at the direction of his legal guardian, asked him to reenter the ambulance, which he did willingly. ACS caseworker Murray attempted several times to identify acceptable foster care, before ultimately succeeding in finding suitable placement for M.S. On the facts before this Court, there is nothing egregious about instructing a minor to return to an ambulance retained by his mother or in finding suitable foster care to enable a minor to be released from a hospital.

Even if Plaintiff could point to a particular policy or custom, he would further need to establish that he was deprived of a federally protected right. *Bd. Of the County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Section 1983 does not create substantive rights. Rather, "[i]t is for violations of... constitutional and statutory rights that 42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Here Plaintiff offers no evidence whatsoever of a deprivation of a federal right. In his complaint he does not allege which federal right defendants purportedly violated. To the extent M.S.'s commitment interfered with his ability to celebrate certain religious holidays, those claims are not pleaded against the City defendants. Officers Chang and Morel interacted with him on September 6, 2010 and had no further contact with him and ACS caseworker Murray had no control over Mt. Sinai's purported restrictions on religious worship. Accordingly, NYC's motion for summary judgment is granted.

*Motion to Amend the Complaint*

Plaintiff has moved to amend the complaint to name the specific police officers, Officers Morel and Chang, who responded to M.S.'s 911 call while he was being transported to the hospital, and also the ACS caseworker, Feola Murray, who was assigned to M.S.'s case. However, for the aforementioned reasons having nothing to do with whether the John & Jane Does in the complaint are identified by name, M.S.'s § 1983 claim is unable to survive a motion for summary judgment. Thus, amending the complaint would be futile. Accordingly, the motion to amend is denied.

*State Law Claims*

Plaintiff asserts state law claims (false imprisonment, assault, and battery) against all defendants, pursuant to this Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). A district court may "decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction...". 28 U.S.C. § 1367(c)(3). Given that all federal claims are dismissed, and considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726-27 (1966) (noting that courts consider judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction).

**CONCLUSION**

For the foregoing reasons, New York City's motion for summary judgment on M.S.'s § 1983 claims is granted. The motion to amend the complaint to add, as defendants, specific municipal employees is denied. The Court declines to exercise supplemental jurisdiction over the remaining claims, and those claims are accordingly dismissed without prejudice against all parties. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED**

s/SLT

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
November 8, 2016